**In the Matter of Thomas Mark HOGAN, Petitioner,**

v.

**Walter BUERGER, Sheriff of Jefferson County, Missouri, Respondent.**

No. 46670.

Missouri Court of Appeals, Eastern District, Division Three.

Feb. 10, 1983.

Dewey S. Godfrey, Jr., St. Louis, for petitioner.

Virginia Constantz, Hillsboro, for respondent.

STEPHAN, Presiding Judge.

Habeas corpus. Petitioner Thomas M. Hogan was taken into custody by Walter Buerger, Sheriff of Jefferson County, Missouri, pursuant to a rendition warrant issued by the Honorable Christopher S. Bond, Governor of Missouri. That warrant had been issued in response to a demand from the Governor of Montana for the extradition of the petitioner to that state upon a charge of theft of property exceeding $150 in value, a felony. The demand duly alleged that petitioner was in the State of Montana at the time of the commission of the offense and thereafter fled to the State of Missouri. § 548.031, RSMo 1978. Governor Bond's warrant repeated these recitations and was predicated on them. A petition for habeas corpus filed in the Circuit Court of Jefferson County was denied. The petition for habeas corpus was filed in this Court on December 28, 1982, and the writ was issued on the same day returnable on December 30, 1982. After the return was filed and the petitioner produced in this Court, he was released on bond and, by consent of the parties, the cause was continued for the taking of evidence.

As required by § 548.031, supra, the demand from the Governor of Montana was accompanied "by information supported by affidavit made before a magistrate there, together with a copy of any warrant which was issued thereupon ..." The body of the affidavit supporting the complaint is as follows:

"Bill Foust, Missoula City Police Department, being first duly sworn upon oath, deposes and says:

That on August 11, 1982, Ralph G. Cronin received a phone call from an individual who said his name was Christianson from the First National Bank and the bank was investigating theft by tellers at the bank. This Mr. Christianson asked Mr. Cronin to go to the bank and withdraw $5,500 and return home. Mr. Cronin did so and upon returning home received another phone call from Mr. Christianson who advised him that they had a deputy follow Mr. Cronin home as a precautionary measure.

At this time an individual arrived at Mr. Cronin's door and identified himself as a Missoula County Deputy Sheriff and flashed a badge.

Mr. Christianson then suggested that Mr. Cronin deliver the money to the deputy who would bring it back to the bank and

Christianson would deposit for Mr. Cronin.

The money was not redeposited and Mr. Cronin called the Missoula Sheriff's Dept. I brought Mr. Cronin photo copies of 102 individuals of whom Mr. Cronin made a tentative identification of Photo # 35, a Mr. Thomas M. Hogan.

I then requested a color photo of Mr. Hogan from St. Louis, Missouri and presented a six color photo lineup to Mr. Cronin who positively identified Mr. Hogan as the Deputy Sheriff who was at his door."

We are not here confronted with a situation as contemplated by § 548.061, RSMo 1978, which permits the extradition of a person to another state who was not present in that state when the crime with which he is charged was committed. That section allows the extradition of "any person in this state charged in such other state . . . with committing an act in this state, or in a third state, intentionally resulting in a crime in the state whose executive authority is making the demand, . . . even though the accused was not in that state at the time of the commission of the crime, and has not fled therefrom." Rather, in the case before us, the only theory upon which petitioner was charged in Montana and detained for extradition in Missouri is that he was in Missoula, Montana, on August 11, 1982,[1] that he represented himself to Ralph G. Cronin at that time and place to be a deputy sheriff, and thereby fraudulently induced Mr. Cronin to surrender $5,500 for redeposit in Mr. Cronin's bank account, thus defrauding Mr. Cronin of that amount.

On January 7, 1983, petitioner produced evidence, discussed in more detail below, tending to show that he was not in Missoula, Montana on or about August 11, 1982, and indeed that he had never been in the State of Montana. Upon motion of respondent's attorney, the hearing was then continued to January 21, 1983, to allow respondent to present evidence. Specifically, respondent's attorney advised that the prosecuting attorney in Montana would produce

the victim, Ralph G. Cronin, and "other witnesses" before this Court. Thereafter, respondent moved for another continuance on the ground that Mr. Cronin was ill and that it would be a hardship for him to appear. That motion was granted and the hearing was re-set for February 3, 1983. When the cause was called on that day, respondent's attorney announced that respondent had no evidence to present, and the matter was taken under submission.

■ As indicated, the entire thrust of petitioner's case is that he was not in the demanding state at the time the offense was committed. In view of the nature of the Montana case against petitioner as outlined above, the fundamental issue before us is whether the governor of this state exceeded his authority in issuing the rendition warrant for petitioner's arrest. In making such determination, we are authorized to determine whether the petitioner is a fugitive from justice. *Application of Evans*, 512 S.W.2d 238, 240 (Mo.App.1974). Thus, our concern here is with the factual issue of whether petitioner was in Montana when the crime was committed and thereafter fled to Missouri, i.e., whether the petitioner is a "fugitive."

■ In making such determination, our function is a limited one. "That the relator was a fugitive from justice was shown prima facie by rendition warrant. In a habeas corpus proceeding he has the burden of proving that he was not in [the demanding state on] the date of the commission of the alleged crime. To sustain such burden it was necessary for him to tender substantial and convincing proof. Conflicting evidence merely tending to establish an alibi will not be sufficient." *Williams v. Robertson*, 339 Mo. 34, 95 S.W.2d 79, 82 (Mo. banc 1936). Recently, the Supreme Court of Indiana stated the point succinctly in *Holland v. Hargar*, 409 N.E.2d 604, 606 (1980), "The issues in an extradition proceeding are limited to fugitivity, identity and the authenticity of the papers . . . The burden of proof is carried by the petitioner once a

1. This was conceded by respondent's attorney at the hearing of December 30, 1982.

prima facie case of identity is established."[2] See also *Seger v. Camp,* 576 S.W.2d 722, 724 (Mo. banc 1978). On the narrow issue now before us, the necessary element of fugitivity cannot exist unless the petitioner "was in the demanding state when the crime was committed." *Ex Parte Arrington,* 270 S.W.2d 39, 43 (Mo. banc 1954).

■ We hold that petitioner has shown to this Court by substantial and convincing proof that he was not in Montana when the crime with which he is charged was committed. It follows that petitioner should be and is discharged.   .

Our conclusion that petitioner has successfully sustained the burden of proving that he was not in Montana on or about[3] August 11, 1982, is based upon the thorough presentation of evidence placed before us by petitioner which may be summarized as follows:[4]

At all times relevant to this case, petitioner resided with his wife and children in Jefferson County, Missouri, and was engaged in the roofing business as a contractor. According to witness Dorothy Amann,

she made arrangements with petitioner to replace the shingles on the roof of her home at 5611 Walsh Street in the City of St. Louis. Petitioner and his crew appeared and commenced work on August 9, 1982. The work continued until completion on Thursday, August 12. Ms. Amann was not present during most of the time when petitioner was working on her roof, but she testified that she spoke with him on the telephone from her place of employment on both August 11 and 12 about details of the job. She was uncertain but thought that he had initiated the calls after she had left word by telephone for him to do so. The last time she saw petitioner in connection with the job was late on the afternoon of August 12.

Two of Mrs. Amann's neighbors, Ruth Kendrick and her daughter Marilyn Harrison, testified that they lived at 5623 Walsh Street and that they were both at home during the week of August 9–13. Mrs. Kendrick talked to petitioner while he was working on the Amann roof and asked that he give her a bid on a new roof for her home. She received a bid from him later

---

**2.** We regard the pronouncements of courts of sister states as informative in this matter, as the several states are all bound by mandate of Article IV, § 2 of the United States Constitution and the implementing statute, 18 U.S.C. § 3182. See § 548.021, RSMo 1978, and *Ex Parte Arrington,* 270 S.W.2d 39, 43 (Mo. banc 1954) where it is said, "Extradition between the states springs basically from Federal Law."

**3.** We accord minimal import to the phrase "on or about" in the complaint for the reason that the affidavit upon which it was based specifically refers to August 11, 1982, and involves a withdrawal from a named bank. That affidavit was executed by one Bill Foust of the Missoula City Police Department. When the Foust affidavit is read with an accompanying affidavit executed by Mr. Cronin before a Montana Justice of the Peace, the date of the bank withdrawal and the date of the fraudulent taking are pinpointed as one and the same, August 11, 1982.

**4.** The quantity and quality of the evidence presented by the petitioner in this case may be contrasted with that presented in *Flournoy v. Owens,* 310 Mo. 355, 275 S.W. 923, 926 (Mo. banc 1925) in which the petitioner sought to attack his status as a fugitive by his testimony alone. He had apparently testified simply that

he "was in Kansas City, Mo., on the afternoon of the day when the robbery took place." In rejecting this "pretense" as "unworthy of belief," our Supreme Court outlined what might have sufficed for such a petitioner:

"To possess such certainty his testimony should have borne the semblance of truth. To carry conviction of its verity to the thinking mind he should have given some account of his movements while in this state, when he came, why he was here, and what he was doing while here, as well as the names of some of the parties he met during his sojourn. In addition, as some considerable time has elapsed since application for this writ was made, opportunity was afforded the petitioner to bring witnesses to this court to establish his contentions or at least to take their depositions. If he did not realize the importance of such activity in his defense, his counsel, if the petitioner's claim had possessed any foundation in fact, would have given the matter speedy attention. Especially is this true when his counsel must have known that the conclusion of the Governor, as expressed in his warrant, constituted prima facie evidence that the petitioner was a fugitive, and that the burden rested upon him to rebut such evidence." *Id.*

that same day. She was unclear as to which day she talked to petitioner. She related the day that she talked to petitioner to the day that her daughter was doing some painting in front of her home. Marilyn Harrison testified that she was at home on vacation when her mother talked to petitioner and that she also talked to him. She recalled that the weather was clear and that it was not raining, as she was painting some concrete statuary in front of the house. Certified Weather Bureau Records admitted without objection indicated that it rained in St. Louis on the afternoon of August 10, 1982.

Christine Malley, secretary-bookkeeper for the company which supplied roofing materials to petitioner, testified that, in accordance with an order which she took from petitioner, she caused shingles to be delivered to the Amann home on August 9 and that the invoice was returned to her showing their receipt over a signature which she recognized as petitioner's. Ms. Malley further testified that at some time after 2:00 p.m. on August 10, petitioner came to her office in Jefferson County, Missouri, with a check in the amount of $11,000 in payment of supplies received by him over the preceding several months.

At petitioner's request, the Court took judicial notice that the distance between St. Louis, Missouri, and Missoula, Montana, is 1331 miles. Petitioner also called the manager of Lambert-St. Louis Airport and representatives of Northwest Orient and Trans World Airlines to testify concerning commercial air connections between St. Louis and Missoula, Montana. Aside from the fact that the testimony of the latter two witnesses established that neither airline had any record of a person traveling to Missoula under petitioner's name on August 10, 1982, the major thrust of the testimony of all three was that commercial air travel between these two points is a relatively slow process involving connecting flights.

Petitioner, his son David Hogan, and William Sellers, an occasional employee of petitioner, all testified that on August 9, 10, and 11, they were primarily occupied with replacing the roof on Mrs. Amann's home; the only break in the performance of this job during normal business hours occurred on the afternoon of August 10, when rain interrupted their efforts.

As indicated above, petitioner's evidence was uncontroverted by anything but the prima facie case established by the rendition warrant itself.

We have extended this opinion in order to demonstrate in some detail our reasons for finding that petitioner has successfully borne the heavy burden of overcoming the prima facie case made by the rendition warrant of the Chief Executive of this State which, in turn, was based upon the demand of the Governor of Montana. We, therefore, hold that petitioner has prevailed upon the issue of fugitivity, from which it must be concluded that the issuance of the rendition warrant was beyond the authority of the Governor.

The petitioner is, therefore, discharged and his bond released.

DOWD, J., concurs.